
# SUPREME COURT OF ARKANSAS

**No.** CV-16-755

|  |  |
|---|---|
| | **Opinion Delivered:** June 8, 2017 |
| ARKANSAS STATE MEDICAL BOARD AND PEGGY CRYER, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY<br>APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-4638] |
| V. | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| KRISTI BYERS<br>APPELLEE | AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS. |

**JOHN DAN KEMP, Chief Justice**

The Arkansas State Medical Board ("Board") and Peggy Cryer, individually and in her official capacity as Executive Secretary of the Board, appeal from the circuit court's order denying their motion for summary judgment based on sovereign and statutory immunities. We affirm in part and reverse in part and remand with instructions.

Appellee Kristi Byers, an African American female, was employed by the Board as the Administrative Services Manager ("ASM"). As the ASM, she was responsible for the Board's financial and human-resources operations. Byers started work on October 7, 2013, as an ASM classified as extra help. Appellants alleged that, after Byers became the sole ASM in 2014, she began violating leave polices. Specifically, appellants alleged that from January

through July 2014, Byers took 232 hours of undocumented paid leave.[1] Cryer terminated Byers on July 25, 2014, for allegedly not using leave time on days that she did not come to work.

Byers filed suit on December 15, 2014, for wrongful termination, alleging race discrimination and retaliation under the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. §§ 16-123-101 to -108 (Repl. 2016), and 42 U.S.C. §§ 1981 and 1983, and seeking damages and injunctive relief.[2] She alleged that she was fired because she had complained about illegal employment practices and purported race discrimination. Appellants filed a motion for summary judgment denying Byers's allegations and arguing, among other things, that the circuit court should dismiss Byers's complaint on immunity grounds. Specifically, appellants asserted that sovereign immunity barred Byers's ACRA claims against the Board and Cryer, in her official capacity. They also asserted that Byers's ACRA claims and federal civil-rights claims against Cryer, in her individual capacity, were barred by statutory immunity. The circuit court denied appellants' motion for summary judgment, concluding that the Board and Cryer were not entitled to sovereign immunity and that Cryer was not entitled to statutory immunity. Appellants now bring this interlocutory appeal of the circuit court's order pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(10) (2016).[3]

[1] Appellants alleged that in February 2014, Byers took 64 hours of undocumented leave; in April, she took 8 hours of undocumented leave; in June, she took 32 hours of undocumented leave, and in July, she took 128 hours of undocumented leave.

[2] Byers also brought claims under the Arkansas Whistle-Blower Act, Ark. Code Ann. §§ 21-1-601 to -610 (Repl. 2016). Those claims are not relevant to this appeal.

[3] "An order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official" is an appealable

I. *Sovereign Immunity*

Appellants contend that the doctrine of sovereign immunity bars Byers's ACRA claims against the Board and against Cryer in her official capacity. Sovereign immunity for the State of Arkansas arises from express constitutional declaration. Article 5, section 20 of the Arkansas Constitution provides, "The State of Arkansas shall never be made a defendant in any of her courts." We have extended the doctrine of sovereign immunity to include state agencies, *see, e.g.*, *Ark. Dep't of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731, and we have recognized that a suit against a public official in his or her official capacity is essentially a suit against that official's agency, *e.g.*, *Ark. Dep't of Human Servs. v. Ft. Smith Sch. Dist.*, 2015 Ark. 81, 455 S.W.3d 294. Generally, a suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *See Ark. Dep't of Envtl. Qual. v. Al-Madhoun*, 374 Ark. 28, 285 S.W.3d 654 (2008). There are, however, exceptions to that rule. For example, we have recognized that a claim of sovereign immunity may be surmounted when the State is the moving party seeking relief or when an act of the legislature has created a specific waiver[4] of sovereign immunity. *See Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007). We have held that a suit against the agency or officer is

---

order. *See* Ark. R. App. P.–Civ. 2(a)(10); *see, e.g.*, *City of Little Rock v. Dayong Yang*, 2017 Ark. 18, 509 S.W.3d 632 (explaining that when the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, an interlocutory appeal is permitted because the right of immunity from suit is effectively lost if a case goes to trial).

[4] We note that section 16-123-104 states that "[n]othing in [the Arkansas Civil Rights Act] shall be construed to waive the sovereign immunity of the State of Arkansas."

SLIP OPINION

not prohibited if the state agency is acting illegally or if an agency officer refuses to perform a purely ministerial act required by statute. *See Clowers v. Lassiter*, 363 Ark. 241, 213 S.W.3d 6 (2005). Moreover, this court has long recognized that a state agency or officer may be enjoined from proposed action that is ultra vires. *See, e.g., Fitzgiven v. Dorey*, 2013 Ark. 346, 429 S.W.3d 234; *Solomon v. Valco, Inc.*, 288 Ark. 106, 702 S.W.2d 6 (1986); *Ark. Game & Fish Comm'n v. Eubank*, 256 Ark. 930, 512 S.W.2d 540 (1974).[5] In addition, we have held that a state agency or officer may be enjoined from acting arbitrarily, capriciously, in bad faith, or in a wantonly injurious manner. *See Ark. Dep't of Envtl. Qual. v. Oil Producers of Ark.*, 2009 Ark 297, 318 S.W.3d 570.

At issue in this case is whether either the "ultra vires" exception or the "bad faith" exception applies. As she argued below, Byers contends that article 5, section 20 "does not bar suit over the official-capacity ACRA claims because the courts have jurisdiction to enjoin officers of state agencies who engage in acts which are ultra vires, in bad faith, or arbitrary, *which is the case here*." (Emphasis added.) She then cites boilerplate law for these exceptions, but she makes no effort to apply the law to the facts of this case, nor did she attempt to do so below. Because Byers did not develop her claim at the circuit-court level, the record does not demonstrate that the ultra vires exception or the bad faith exception to sovereign immunity applies. *See Grine v. Bd. of Trs.*, 338 Ark. 791, 798–99, 2 S.W.3d 54, 59 (1999).

---

[5] For an act to be ultra vires, it must be "beyond the agency's or officer's legal power or authority." *Solomon*, 288 Ark. at 108, 702 S.W.2d at 7.

Because a judgment for Byers would operate to control the action of the State or subject it to liability, her ACRA claims against the Board and against Cryer in her official capacity are barred by article 5, section 20 of the Arkansas Constitution. Accordingly, we reverse the circuit court's denial of summary judgment on sovereign immunity and remand with instructions for the circuit court to enter an order dismissing the ACRA claims against the Board and against Cryer in her official capacity.

## II. *Statutory Immunity*

Appellants contend that statutory immunity bars Byers's ACRA claims and federal civil-rights claims against Cryer in her individual capacity. When determining whether officers and employees of the State are entitled to statutory immunity, we have traditionally been guided by the standard used for qualified-immunity claims in federal civil-rights actions. *See, e.g.*, *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002) (per curiam). Generally, an official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id.*, 89 S.W.3d 919 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). To stave off summary judgment on qualified immunity, a civil-rights plaintiff must assert a constitutional violation, demonstrate that the constitutional right is clearly established, and raise a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *See Baldridge v. Cordes*, 350 Ark. 114, 85 S.W.3d 511 (2002).

Further, employees and officers of the State are afforded statutory immunity from civil liability and from suit for nonmalicious acts occurring within the course of their employment. *See Grine*, 338 Ark. 791, 2 S.W.3d 54; Ark. Code Ann. § 19-10-305(a) (Repl.

2016) ("Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment."). In defining malice as it used in section 19–10–305(a), this court has stated,

> "It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another." *Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 185, 485 S.W.2d 192, 195 (1972); *see also Stine v. Sanders*, 66 Ark. App. 49, 987 S.W.2d 289 (1999). Malice is also defined as "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent . . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief." *Black's Law Dictionary*, 956–57 (6th ed. 1990).

*Fuqua v. Flowers*, 341 Ark. 901, 905–06, 20 S.W.3d 388, 391 (2000).

In the instant case, Byers alleged that Cryer terminated her in retaliation for her complaints about race discrimination. According to Byers, Jennifer Johnson, an African American female employed by the Board, complained to Cryer about racial discrimination. Byers alleged that Cryer was angered by Johnson's complaint and told Byers to fire Johnson. Cryer acknowledged that she and Johnson had a conversation about discrimination, but she denied that she was angry about the conversation, and she denied that she had asked Byers to fire Johnson. Cryer stated that Johnson was not terminated and that she continued working for the Board until she voluntarily left. Byers also alleged that Cryer refused to pay Nona Rose, an African American job applicant, a higher salary than a current white employee in the same position. Byers acknowledged, however, that the white employee had already been working in the position for one year. Cryer maintained that she did not

terminate Byers because of any conversations they had about Johnson and Rose, or any purported complaints of race discrimination. Rather, she stated that she fired Byers after discovering that Byers had "stolen" 232 hours of undocumented leave time. Cryer stated that she asked Byers to turn in leave slips for her time off,[6] but Byers neither acknowledged the request nor turned in any leave slips.

Appellants contend that Cryer is entitled to statutory immunity because Byers has failed to demonstrate malice. We agree that statutory immunity bars Byers's ACRA claims against Cryer in her individual capacity. This court has made clear that a bare allegation of willful and wanton conduct is not enough to demonstrate malice. *See Simons*, 369 Ark. 447, 255 S.W.3d 838; *Fegans*, 351 Ark. 200, 89 S.W.3d 919; *Fuqua*, 341 Ark. 901, 20 S.W.3d 388; *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). A review of the record reveals that Byers filed three complaints in this case: a complaint, an amended complaint, and a second amended complaint. Byers did not specifically allege in any of her complaints that Cryer acted maliciously. In their motion for summary judgment, appellants argued that Byers's race discrimination and retaliation claims against Cryer in her individual capacity were barred by statutory immunity because Cryer did not act with malice when she terminated Byers. Byers responded that statutory immunity did not bar the claims because Cryer acknowledged that she "knew the law" and "knew she could not retaliate," but Byers did not respond to appellants' contention that Cryer had not acted with malice. At the

---

[6] In an email dated June 29, 2014, Cryer stated to Byers, "I have never received time slips from you when you have been ill. I can only assume that you have them in a folder, would you please let me sign off on them?"



hearing on the motion for summary judgment, appellants reiterated their argument that Cryer was entitled to statutory immunity for the individual-capacity claims under ACRA because Byers had failed to establish malice. In response, counsel for Byers stated,

> Well, tell me what can be more outside the law than racial discrimination or retaliation when the lady acknowledged she couldn't do it. I've raised a, a reasonable inference of fact that she did do it. Judge, if I walk in here drunk and, and first thing you're going to say, and I'm not by the way, but if I do, you're going to say, Mr. Sutter, are you drunk? Yes, sir. Well, did you know you weren't supposed to go to Court drunk? Yes, sir. You, you sentence people to jail for that type of conduct much less holding them civilly liable. Malice is just a, is just a label more than anything else.

> If you know that you have an obligation under the law, and then I prove that you did it anyway, I think that's sufficient to show a reckless disregard, and, therefore, malice. But, I'll acknowledge to you, you know, it's just something I'm going to have to develop if, if, well, when this goes up because they always appeal every single thing that I do alleging that every, every single case I bring is unwarranted by the facts of the law.

In her brief on appeal, Byers appears to assert that she has proved malice because (1) "[r]ace discrimination is, by definition, hateful and vindictive," (2) Cryer testified that she knew race discrimination and retaliation were illegal, and (3) it is "reckless for anyone to engage in racial discrimination and retaliation in the 21st century." In sum, Byers has merely stated, in conclusory fashion, that Cryer acted with malice when she fired Byers. Byers's bare allegation is insufficient to demonstrate malice. *See, e.g.*, *Simons*, 369 Ark. 447, 255 S.W.3d 838. Therefore, we hold that Cryer is entitled to statutory immunity on Byers's individual-capacity race-discrimination and retaliation claims under the ACRA. Accordingly, we reverse the circuit court's denial of summary judgment on this basis and remand with instructions for the circuit court to enter an order dismissing the ACRA claims against Cryer in her individual capacity.

Finally, appellants contend that statutory immunity pursuant to section 19–10–305(a) bars Byers's §§ 1981 and 1983 claims against Cryer in her individual capacity. Immunity under state law is not dispositive of a federal civil-rights claim against state actors in their individual capacities, even if the claim is brought in state court. *See Early v. Crockett*, 2014 Ark. 278, n.5, 436 S.W.3d 141 n.5. Although appellants contend that the federal claims against Cryer are barred by statutory immunity, they fail to support their contention with cogent legal argument or citation to relevant authority. This court has been resolute in holding that it will not address assignments of error that are unsupported by convincing argument or sufficient legal authority. *E.g.*, *Evans v. Tillery*, 361 Ark. 63, 204 S.W.3d 547 (2005). Therefore, we affirm the circuit court's ruling that Cryer is not entitled to statutory immunity on the federal civil-rights claims.

Affirmed in part; reversed in part and remanded with instructions.

*Leslie Rutledge*, Att'y Gen., by:  *C. Joseph Cordi, Jr.*, Sr. Ass't Att'y Gen., and *Delena C. Hurst*, Ass't Att'y Gen., for appellant.

*Sutter & Gillham, P.L.L.C.*, by:  *Luther Oneal Sutter* and *Lucien Gillham*, for appellee.