Karen R. Baker, Justice, concurring.
I agree with the majority's disposition; however, I write separately for the reasons stated in my dissent in Board of Trustees of University of Arkansas v. Andrews , 2018 Ark. 12, 535 S.W.3d 616 and its progeny. Further, the majority states that "we have previously recognized an exception to the defense of sovereign immunity when the State is acting illegally, unconstitutionally, or ultra vires." Ark. Lottery Comm'n v. Alpha Mktg. , 2013 Ark. 232, at 7, 428 S.W.3d 415, 420. The majority goes on to explain that a plaintiff seeking to surmount sovereign immunity under this exception is not exempt from complying with our fact-pleading requirements. Ark. Tech. Univ. v. Link , 341 Ark. 495, 17 S.W.3d 809 (2000). However, I must first point out that Alpha Marketing was decided over four years prior to Andrews and Link was decided almost eighteen years prior to Andrews. As I explained in my Andrews dissent, "in a perfunctory fashion, [the majority] overhaul[ed] over twenty years of our well-established law on sovereign immunity and has effectively revived the antiquated doctrine that "the king can do no wrong." " Id. at 17, 535 S.W.3d at 626 (Baker, J., dissenting).
Second, while I concurred in Williams v. McCoy , 2018 Ark. 17, 535 S.W.3d 266, which was handed down on the same day as Andrews , even a fortune-teller could not have predicted the state of disarray that would lie in the wake of Andrews. See Walther v. FLIS Enters., Inc. , 2018 Ark. 64, 540 S.W.3d 264 (sovereign immunity is an affirmative defense and a failure to assert it amounts to a waiver); Ark. Dep't of Veterans Affairs v. Mallett , 2018 Ark. 217, 549 S.W.3d 351 (the failure to assert *118 sovereign immunity is of no moment); Wilson v. Ark. Dep't of Human Servs. , 2018 Ark. 358, at 5-6, 562 S.W.3d 201, 203-04 (Hart, J., concurring) (" FLIS provides that the failure to assert sovereign immunity as an affirmative defense amounts to a waiver of this doctrine, but in [ Mallett ], this court held that the failure to assert sovereign immunity simply does not matter. These cases are at odds on this question, and the majority's decision here to cite FLIS as controlling authority only renders our jurisprudence further indiscernible."); Id. at 8, 562 S.W.3d at 205 (Wynne, J., dissenting) ("The majority cites [ FLIS ] for the proposition that sovereign immunity is not a matter of subject-matter jurisdiction that may be addressed for the first time on appeal; rather, it is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. However, after FLIS , this court handed down [ Mallett ].... Over three years into the case, ADVA filed a motion to dismiss and argued for the first time that it was entitled to sovereign immunity. The circuit court denied the motion, but this court reversed and dismissed. As noted by two dissenting opinions, Mallett thus retreated from FLIS 's treatment of sovereign immunity as an affirmative defense.").
Third, in Mallett , supra , the majority included a footnote cautioning the application of Andrews :
We caution that Andrews should not be interpreted too broadly. The holding that the legislature may "never" authorize the state to be sued was in the application of the constitutional provision to a statutory act, AMWA, for monetary relief. Since Andrews , this court has not had the occasion to consider other actions against the state such as allegations that state actors are acting outside their constitutional duties, whether acting in a manner that is ultra vires, arbitrary, capricious, in bad faith, or refusing to perform ministerial duties.
2018 Ark. 217, at 2 n.2, 549 S.W.3d at 352 n.2. As I explained in my dissent in Mallett , the majority's footnote "conflicts with Andrews and illustrates the flaws in Andrews. " 2018 Ark. 217, at 4, 549 S.W.3d at 353 (Baker, J., dissenting). In a more recent dissent, I noted that Andrews did not identify exceptions, exemptions, or the like. Again, the State may never be sued. Ark. Oil & Gas Comm'n v. Hurd , 2018 Ark. 397, at 18, 564 S.W.3d 248, 258 (Baker, J., dissenting).
Fourth, article 5, section 20 of the Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." As explained by the majority in Andrews , "We interpret the constitutional provision, 'The State of Arkansas shall never be made a defendant in any of her courts,' precisely as it reads." 2018 Ark. 12, at 10, 535 S.W.3d at 622. Further, sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. Andrews , supra (citing LandsnPulaski, LLC v. Ark. Dep't of Corr. , 372 Ark. 40, 269 S.W.3d 793 (2007) ; Clowers v. Lassiter , 363 Ark. 241, 213 S.W.3d 6 (2005) ; Link , supra ).
In the present case, the majority holds that Jones failed to sufficiently plead facts stating an exception to the doctrine of sovereign immunity. However, based on Andrews , because the State may never be sued-there is jurisdictional immunity from suit-Jones's pleadings are inconsequential. Pursuant to Andrews , because we interpret the constitution "precisely as it reads," Banks in his official capacity, is immune from suit. Accordingly, I agree that we should reverse the circuit court's denial of Banks's motion to dismiss the claims against him in his official capacity.
*119 Finally, with regard to the individual capacity-claims, I also agree that statutory and qualified immunity bar Jones's claims. In sum, I would reverse and dismiss for the reasons set forth above.
Josephine Linker Hart, Justice, concurring in part and dissenting in part.
In this interlocutory appeal, this court has jurisdiction to consider only whether the circuit court erred by denying Banks's motion to dismiss based on immunity. Ark. R. App. P.-Civ. 2(a)(10). While I agree with the majority that there are deficiencies in Ms. Jones's complaint, she has nonetheless sufficiently pled facts to establish that she was seeking to redress the type of illegal activity that is not protected by sovereign immunity or government-official immunity.
Taking all the allegations in Ms. Jones's complaint as true, as we must, she pled that she was a victim of illegal racial and sexual discrimination. She alleged that she was a victim of the disparate treatment that Banks, as warden, subjects minority females to and that he has engaged in a pattern and practice of sexual and racial discrimination. All these allegations refer to illegal or unconstitutional actions. Thus, she has stated an exception to sovereign immunity. See Ark. Lottery Comm'n v. Alpha Mktg. , 2013 Ark. 232, 428 S.W.3d 415.
Nonetheless, I must join the majority's disposition of this case because of this court's decision in Arkansas Tech University v. Link , 341 Ark. 495, 17 S.W.3d 809 (2000). The Link court conflated a dismissal pursuant to Arkansas Rule of Civil Procedure 12(b)(6) with a motion to dismiss that alleges sovereign immunity. The distinction between the two theories for dismissal is profound.
Under 12(b)(6), a denial of a motion to dismiss for failure to state facts is not appealable. Even if such a motion is granted, the dismissal in circuit court is without prejudice. Swink v. Ernst & Young , 322 Ark. 417, 908 S.W.2d 660 (1995). However, a motion to dismiss based on sovereign immunity, as previously noted, is appealable. Ark. R. App. P.-Civ. 2(a)(10). Accordingly, in my view, this court should take this opportunity to overrule Link. However, failing that, because we are bound by stare decisis, I must join in the disposition of the official-capacity claims in this case.
There is, however, no legally suspect case law to rely on with regard to statutory immunity for Banks's individual-capacity claims. As the majority correctly notes, qualified immunity exists to give government officials "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims , 571 U.S. 3, 6, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013). In the case before us, Ms. Jones clearly pled that Banks's discriminatory actions against her were consistent with established practices that he had directed against women and minorities. Furthermore, Ms. Jones pled that Banks had already been found to have committed these discriminatory acts against at least one other African American female. Suffice it to say that Banks's job discrimination does not include invidious discrimination against women and minorities. Accordingly, I would affirm the circuit court's refusal to grant qualified immunity to Banks. Thus, Ms. Jones's individual-capacity claims against Banks should go forward. This case should be remanded for further proceedings.